# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 22, 2018

v

No.  335575
Huron Circuit Court
LC No.  16-306035-FH

KYLE WAYNE BEAUDIN,

Defendant-Appellant.

Before:  RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of three counts of forgery, MCL 750.248, one count of uttering and publishing, MCL 750.249, and one count of larceny under $200.00, MCL 750.356(4)(b) and MCL 750.356(5).  The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to prison terms of 4 to 30 years for the uttering and publishing and forgery convictions, and 303 days for the larceny conviction.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant rented a room at the residence of Brenda Dow from August 2015 to January 2016.  Dow also rented a room to Brian Brown and his daughter.  On January 5, 2016, Harbor Beach police officers executed a search warrant at Dow's residence and discovered several checks associated with Brown's bank account in defendant's bedroom, along with a new checkbook belonging to Brown.  Three of the checks had been made out to defendant.  A teller from Chemical Bank testified that defendant had attempted to cash a check from Brown.  However, the bank did not honor the check because the account had been closed.  Another personal check found in defendant's room was subsequently determined to have been stolen out of the mailbox of a nearby resident, Jeanette Ziel.

Brown testified that while he was living at Dow's home, she had assisted him with writing checks.  Defendant's theory at trial was that Dow had framed him, and that she had planted the checks in his room because he was indebted to her.  Defendant also testified that he occasionally had babysat Brown's daughter, until she and Brown moved out of the Dow residence.  According to defendant, he had never received compensation for the services, and Brown owed him money.

-1-

Michigan State Police Sergeant Todd Welch, an expert in the fields of forensic document examination and handwriting identification, testified at trial that he had examined the three checks made out to defendant from Brown's account. Welch explained that he had examined handwriting samples from defendant, Dow, and Brown, and that it was his opinion that defendant had written his name on the checks as the payee, and that it was highly probable that Brown had not signed the checks.

The prosecution presented evidence of defendant's past convictions of forgery and breaking and entering a coin-operated device. Additionally, the prosecution presented evidence that defendant had previously forged checks belonging to his sister's boyfriend, that defendant had stolen jewelry belonging to Dow, that Brown's checkbook was found in defendant's bedroom, and that defendant had stolen and forged a commercial check in a separate incident of check forgery.

Defendant sought to admit evidence that on one occasion, while he was working on a paper route, a customer had left him a blank check and a shopping list, and had asked defendant to do some grocery shopping for him as a favor. Instead of performing the errand, defendant gave the blank check to his supervisor at the newspaper, because he was forbidden from handling personal checks because of his prior convictions. The trial court denied the admission of this evidence. Additionally, defendant sought to introduce the testimony of Austin Holmes, who allegedly would have testified that while riding his bicycle past the Dow residence one evening, he had witnessed Dow hand defendant something that looked like a check. The trial court warned Holmes of the penalties for perjury and advised him of his right against self-incrimination as follows:

> *The court.* Because this proceeding is a felony proceeding and this is a 14-year felony, if – if for instance you were to be administered under the oath, which you already have, and testify before the [j]ury and if you are not being honest with the [j]ury, in other words you are committing perjury or it appears you're committing perjury, that that [sic] is a felony that's punishable by – in state's prison for not more than 15 years, the maximum sentence you could get if you're found guilty of committing perjury is up to 15 years, do you understand that?
>
> *Witness.* Yes.
>
> *The court.* And do you also understand that you have the right to remain silent, anything you say can and will be used against you in a court of law. You have the right to an attorney, and if you cannot afford one, one would be provided for you at public expense, do you understand those rights?
>
> *Witness.* Yes.
>
> *The court.* And do you have any questions regarding any of those rights?
>
> *Witness.* No – no Your Honor.

-2-

*The court.* No. Do you have any question regarding the possible consequence if indeed it is found that you may have committed perjury in a criminal proceeding, do you understand all of that?

*Witness.* Yes.

*The court.* The maximum punishment that could be imposed as well?

*Witness.* Yes.

Holmes declined to testify, and agreed that the trial court had not threatened him and had merely advised him of his rights and the consequences of perjury.

The jury convicted defendant as described. This appeal followed.

## II. ADMISSION OF PRIOR CONVICTIONS AND OTHER ACTS

Defendant argues that the trial court applied an incorrect legal standard in determining that evidence of his prior convictions of forgery and breaking and entering a coin-operated device was admissible for impeachment purposes. Additionally, defendant argues that the trial court erroneously admitted evidence concerning defendant's other acts under MRE 404(b). We disagree in both respects.

"A trial court's decision to admit evidence is reviewed for an abuse of discretion." *People v Buie*, 298 Mich App 50, 71; 825 NW2d 361 (2012). The abuse of discretion standard recognizes "that there will be circumstances in which there will be no single correct outcome . . . ." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Accordingly, this Court should defer to the trial court's judgment if its decision is within the range of principled outcomes. *Id.*; *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785, 790 (1998) ("The decision whether such evidence is admissible is within the trial court's discretion and will only be reversed where there has been a clear abuse of discretion.")

### A. IMPEACHMENT EVIDENCE

Defendant challenges the admission of evidence of his past convictions of forgery and breaking and entering a coin-operated device. MRE 609 provides:

(a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness[1] or established by public record during cross-examination, and

---

[1] Defendant testified to the convictions at issue; therefore, the evidence was "elicited from the witness." MRE 609(a).

(1) the crime contained an element of dishonesty or false statement,

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

(b) For purposes of the probative value determination required by subrule (a)(2)(B), the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity. If a determination of prejudicial effect is required, the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify. The court must articulate, on the record, the analysis of each factor.

Crimes involving an element of dishonesty or false statement are presumptively more probative than prejudicial and are therefore admissible as a matter of law. MRE 609(a)(1). The elements of forgery under MCL 750.248 are: "(1) an act which results in the false making or alteration of an instrument (which makes an instrument appear to be what it is not); and (2) a concurrent intent to defraud or injure." *People v Johnson-El*, 299 Mich App 648, 651; 831 NW2d 478 (2013). "The key is that the writing itself is a lie." *Id*. Therefore, defendant's forgery conviction involved an element of dishonesty or false statement, and evidence of that conviction was admissible for impeachment purposes as a matter of law.

We also hold that the trial court correctly applied the language of MRE 609(a)(2)(B) and (b) in determining that evidence of defendant's breaking and entering a coin-operated device conviction was admissible. The crime of breaking and entering a coin-operated device, MCL 752.811, is a form of burglary, committed when an offender "[e]nters or forces an entrance, alters or inserts any part of an instrument into any parking meter, vending machine dispensing goods or services, money changer or any other device designed to receive currency or coins with the intent to steal," or knowingly possesses an object adapted and designed to break into such a machine. See *People v Yeoman*, 218 Mich App 406, 416; 554 NW2d 577 (1996). Defendant concedes that his conviction for breaking and entering a coin-operated device contained an element of theft.[2]

---

[2] We need not address whether a violation of MCL 752.811 necessarily contains an element of theft in all circumstances, in light of defendant's concession regarding his particular conviction. However, we note that this Court has characterized a breaking and entering conviction as

The trial court stated:

[I]n general theft crimes are minimally probative of the issue of credibility or at most moderately probative of the issue of regarding veracity. And in this case, that was about a two-year old prior conviction regarding the credibility aspect.

Now, where the defendant is the witness, the Court must take the extra step to determine the prejudicial effect of admitting the evidence. And when you determine that – in determining the prejudicial effect of admitting the prior conviction, the Court must consider only the conviction similarity to the alleged offense and the importance of the defendant's testimony to the decisional process.

Now, I don't disagree, any time you bring up a theft crime, that issue of – to the jury as it goes, is he telling the truth, whether or not that's going to create an effect.

But the other aspect, which I heard nothing about, is the importance of the defendant's testimony to the decisional process. The defendant stated through counsel that he's gonna have his day in court and it's not gonna make a difference. In other words, the admission of the theft crime for impeachment purposes is not gonna create any chilling effect upon the defendant because he's gonna testify anyway, that's – that's what I heard from – from counsel.

So in that fact, I'm gonna allow the prior conviction for impeachment purposes, that is the B and E coin operated – coin operated device for that reason.

MRE 609(a)(2)(B) required the court to determine whether the evidence of the conviction had "significant probative value on the issue of credibility," and because it was offered against a defendant witness in a criminal trial, the court had to find that its probative value outweighed any prejudicial effect.[3] However, MRE 609(b) limits the trial court's probative value analysis to consideration of "only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity." Here, the trial court noted that the conviction occurred approximately two years earlier[4] and was moderately probative of veracity. The trial court also considered the prejudicial effect of the admission of the evidence. The court found that admission of the evidence would not create a "chilling effect" on defendant's decision to testify. The court's determination was centered on its finding that defendant was going to "testify anyway" based on defense counsel's indication that defendant was "adamant that he wants to

---

"involving" theft and subject to the balancing test of MRE 609(a)(2)(B). *People v Bartlett*, 197 Mich App 15, 19; 494 NW2d 776 (1992).

[3] Although not discussed explicitly by the trial court, a violation of MCL 752.811 is punishable by imprisonment for up to three years, and therefore satisfies MRE 609(a)(2)(A).

[4] Defendant does not raise an issue concerning the age of the conviction. MRE 609(b).

testify" and that defendant wanted "his day in court." The trial court thus articulated both a probative value and prejudicial effect analysis on the record as MRE 609(b) requires.

Additionally, the court instructed the jury that it could consider defendant's prior convictions only as evidence in deciding whether they believed the defendant to be a truthful witness. The court further instructed the jury that it "may not use it for any other purpose[]" and that "[a] past conviction is not evidence that the defendant committed the alleged crime or crimes in this case." Jurors are presumed to follow the trial court's instructions. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

We conclude that the trial court's decision to admit evidence of defendant's forgery conviction was proper because the evidence was "admissible per se," *People v Minor*, 170 Mich App 731, 735; 429 NW2d 229 (1988), and that its decision to admit evidence of defendant's breaking and entering conviction was in accordance with the requirements of MRE 609 and was "within the range of principled outcomes[,]" *Maldonado*, 476 Mich at 388. Therefore, we find no abuse of discretion with respect to the court's admission of evidence of defendant's prior convictions.

### B. OTHER-ACTS EVIDENCE

Defendant also argues that the trial court erred by admitting other-acts evidence under MRE 404(b). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The evidence must be offered for a proper, non-character purpose, and "be relevant under Rule 402 as enforced through Rule 104(b)[.]" *Crawford*, 458 Mich at 385. Moreover, the probative value of the evidence must not be substantially outweighed by unfair prejudice, and "the trial court may, upon request, provide a limiting instruction to the jury." *Id*. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Here, the trial court determined that the evidence of defendant's other acts was admissible for the purpose of establishing defendant's "plan or scheme in doing an act." We agree. The evidence of past forgery or attempted forgery tends to demonstrate defendant's knowledge of check forgery and his plan or scheme in doing the act of forgery. The additional evidence of defendant's possession of Dow's jewelry, the stolen commercial check, and Brown's checkbook all demonstrate defendant's scheme to defraud and steal from persons who lived in or near his residence. The evidence was therefore offered for proper purposes, and not to demonstrate defendant's propensity.

Moreover, the evidence was relevant because each offense with which defendant was charged required the prosecution to prove that defendant had the intent to defraud both when he forged the checks from Brown and when he cashed them, and intended to steal from Ziel when he took her check. Considering the nature of the crimes charged, and the other-acts evidence admitted, evidence of defendant's plan or scheme to steal, forge, and attempt to cash checks and evidence of the absence of mistake or accident was significantly probative. See MRE 401. Further, the trial court determined that the probative value of the evidence was not substantially outweighed by the potential for unfair prejudice. All relevant evidence is prejudicial; MRE 404(b) only precludes the admission of unfairly prejudicial evidence, such as evidence that, despite its marginal relevance, is likely to be given undue or preemptive weight by the jury. See *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). In this case, the other-acts evidence admitted was highly probative and not unfairly prejudicial. See *id.* This is especially true considering the trial court's limiting instruction to the jury, which states:

> You've also heard evidence that was introduced to show that the defendant committed improper acts for which he is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that the defendant acted purposefully, that is not by accident or mistake, or because he misjudged the situation, or that the defendant used a plan, system or characteristic scheme that he has used before or since.

Again, jurors are presumed to follow their instructions. See *Graves*, 458 Mich at 486.

In sum, the trial court's determination that the challenged other-acts evidence was admissible was "within the range of principled outcomes[,]" *Maldonado*, 476 Mich at 388, because it was offered for proper purposes and was relevant, its probative value was not substantially outweighed by unfair prejudice, and the court provided an appropriate limiting instruction.

### III. DUE PROCESS

Defendant argues that his right to due process of law was violated by the trial court's statements to Holmes regarding the penalty for perjury and his right to avoid self-incrimination. We conclude, however, that defendant waived review of this issue when defense counsel elicited testimony from defendant in open court that it was Holmes's decision and right not to testify, and that defendant would not "hold it against him." Defendant also agreed on the record with the statement of the trial court that Holmes "could be ordered to testify whether it be through subpoena or otherwise, but as a result of the statements made by the defendant, I don't find any chilling effect whatsoever." Defendant and his counsel thus both clearly expressed satisfaction with the trial court's decision. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) ("When defense counsel clearly expresses satisfaction with a trial court's decision, such will be deemed to constitute waiver."); *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000) ("Counsel may not harbor error as an appellate parachute.").

Further, even if the issue is not waived, "warnings to potential defense witnesses concerning self-incrimination or possible perjury charges have been held to be proper." *People v*

*Robbins*, 131 Mich App 429, 439; 346 NW2d 333 (1984). The trial court's warnings to Holmes concerning the consequences of perjury and his right to avoid self-incrimination were not threatening, abusive, or intimidating, nor did the court prevent Holmes from making a free and voluntary choice whether to testify. *Id*., *Webb v Texas*, citing 409 US 95, 93 S Ct 351, 34 L Ed 2d 330 (1972). We discern no error in the trial court's statements to Holmes.

## IV. RIGHT TO PRESENT A DEFENSE

Defendant also argues that his constitutional right to present a defense was violated because the trial court did not admit evidence offered by defendant of his good character. We disagree.

Although defendant objected to the trial court's ruling with respect to his proffered character evidence at trial, he did not object on constitutional grounds. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014) (Preservation of a constitutional issue requires an objection on constitutional grounds.). Therefore, the evidentiary issue is preserved but the constitutional issue is unpreserved. "A trial court's decision to admit evidence is reviewed for an abuse of discretion." *Buie*, 298 Mich App at 71. Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 761-765; 597 NW2d 130 (1999). For plain error to require reversal, we must find that (1) error occurred; (2) the error was clear or obvious; and (3) the error affected substantial rights. *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986) (internal citations omitted). The right, however, is not absolute and remains subject to the rules of evidence. *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (internal quotations omitted).

MRE 404(a)(1) permits "evidence of a pertinent trait of character offered by an accused . . . ." The rule grants "a criminal defendant an absolute right to introduce evidence of his character to prove that he could not have committed the crime." *People v Whitfield*, 425 Mich 116, 130; 388 NW2d 206 (1986). Unless certain conditions not present here are met, however, "the accused can only present favorable character evidence in the form of reputation testimony." *Id*. See also MRE 405.

Here, the evidence offered by defendant was of a specific instance of conduct (i.e., defendant turning in a blank check to his supervisor because he was not supposed to possess it), and was not evidence offered in the form of reputation or opinion. None of the crimes charged (forgery, uttering and publishing, and larceny) included an essential element concerning defendant's character for honesty or truthfulness. See MRE 405(b). Therefore, defendant was limited to producing evidence of his character for truthfulness or honesty in the form of

reputation or opinion testimony. See MRE 405(a), (b). Defendant cannot establish any error, let alone plain error, in the trial court's determination not to admit this evidence. And because the proffered evidence was not admissible, his right to present a defense did not extend to this evidence. *Solloway*, 316 Mich App at 198.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant claims that his trial counsel was ineffective in failing to object to the admission of evidence of defendant's past convictions[5], and when his trial attorney concurred with, and failed to object to, the trial court's statements to Holmes. We disagree.

Defendant failed to preserve his claims of ineffective assistance of counsel by either filing a motion for a new trial, *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000), or moving for a *Ginther*[6] hearing at the trial court level, *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994). Therefore, this Court's "review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW 2d 342 (2004).

To establish ineffective assistance of counsel, "the defendant must show that counsel's representation fell below an objective standard of reasonableness[,]" in addition to establishing "that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687-88; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "[D]efendant must overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). With respect to prejudice, defendant must establish that counsel's deficiency "was so prejudicial to him that he was denied a fair trial." *Id*. Accordingly, defendant must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 302-303. Further, counsel is not required to argue frivolous or meritless motions. *People v Gist*, 188 Mich App 610, 613; 470 NW2d 475 (1991).

With respect to his first claim of ineffective assistance of counsel, defendant cannot establish that his trial attorney's failure to object to the admission of evidence of his convictions fell below an objective standard of reasonableness or prejudiced the proceedings against him. The forgery conviction was "admissible per se." *Minor*, 170 Mich App at 735. And the breaking and entering conviction was properly admitted by the trial court under MRE 609. Therefore, any objection to the admission of this evidence would have been meritless; defense counsel was not required to make meritless objections. *Gist*, 188 Mich App at 613.

---

[5] Defendant's brief on appeal refers specifically to the admission of evidence of a past "larceny" conviction; as discussed, however, the evidence in question was of defendant's prior convictions of forgery and breaking and entering a coin-operated device. We will presume (to defendant's benefit) that his challenge is to the admission of evidence of *all* of his past convictions.

[6] *People v Ginther*, 390 Mich 436, 441-443, 212 NW2d 922 (1973).

With regard to his second claim of ineffective assistance of counsel, we similarly conclude that, because the trial court did not err by instructing Holmes on the possible consequences of his testimony, any objection by trial counsel on the ground that Holmes was coerced not to testify would have been meritless. *Id.* Further, to the extent that defendant argues that defense counsel actually caused the trial court to give such an instruction to Holmes, thereby convincing Holmes not to testify, defendant cannot establish that his counsel's conduct fell below an objective standard of reasonableness. In addition to addressing the likelihood of Holmes potentially perjuring himself, defense counsel stated with regard to Holmes's potential testimony, "I just think even if we didn't have this possible perjury issue, the story is just so hard for me to believe that I think it's gonna damage [defendant's] credibility having this guy testify to a story like that." Additionally, defense counsel addressed the issue with defendant on the record:

> If we put [Holmes] up there and they find out that you guys are friends and the – the story of riding by at 11:30 at night in November on his bike is not gonna be a believable story to the [j]ury, and then the [j]ury's gonna think that you and [Holmes] cooked up this story and then they're gonna think that you're a liar because you cooked up this story, so anything you say later when you get up to testify is gonna be – they're not gonna believe it.

The record indicates that defense counsel had concern for the truthfulness of Holmes's testimony and the effect that it would have on the jury's assessment of defendant's credibility if the jury were to find Holmes not to be credible. It was therefore reasonable for defense counsel to seek to ensure that Holmes was aware of the consequences of giving untruthful testimony. Defendant has failed to overcome the strong presumption that counsel's conduct constituted sound trial strategy under the circumstances. *Toma*, 462 Mich at 302.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola