# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 18, 2015

Plaintiff-Appellee,

v

No. 321228
Macomb Circuit Court

JAMES RONNIE HOLLOWAY II, a/k/a JAMES
RONNIE HALLOWAY II,

LC No. 2013-003469-FC

Defendant-Appellant.

Before: METER, P.J., and CAVANAGH and WILDER, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of assault with intent to commit murder, MCL 750.83. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues the evidence did not establish that he intended to kill the victim; thus, it was insufficient to support his conviction. We disagree.

"A challenge to the sufficiency of the evidence is reviewed de novo." *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). "When reviewing a claim of insufficient evidence, this Court reviews the record in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* "This Court must not interfere with the jury's role as the sole judge of the facts when reviewing the evidence." *Id.* Thus, "[t]he reviewing court must draw all reasonable inferences and examine credibility issues in support of the jury verdict." *Id.*

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). "Circumstantial evidence and reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime." *Id.* Defendant challenges only the sufficiency of the evidence to support the intent element of his conviction. "The intent to kill may be proved by inference from any facts in evidence." *Id.* "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *Id.* The requisite actual intent to kill may be proved by "'the nature of the defendant's acts constituting the assault; the temper or disposition of mind

-1-

with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, [the defendant's] conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made."' *People v Taylor*, 422 Mich 554, 568; 375 NW2d 1 (1985) (citation omitted).

The victim was defendant's long-term girlfriend, and they had two sons together. From the victim's testimony detailing the violent nature of defendant's conduct during the assault, as well as the manner of the assault, a rational jury could reasonably find that the natural tendency of defendant's assaultive conduct was to cause death to the victim. See *id*. The victim testified that, during the early morning hours, while she was asleep in her bedroom, she awoke when she heard defendant enter her bedroom and lock the door. The victim testified that defendant then struck her in the back of her head with a "hard," "heavy" metal bar while she was lying on her stomach in her bed. Defendant then picked her up, threw her on the floor, got on top of her, straddled her and, with both hands and applying his weight, pressed the metal bar against her neck which impaired her ability to breathe and caused her to lose consciousness. After regaining consciousness, the victim saw that she was "bleeding everywhere" and defendant "dragged" her into the shower to stop the bleeding. The victim testified that she tried to go downstairs to get away from defendant, but he prevented her from going downstairs. Instead, he "took" or "dragged" her back into the bedroom, where she either fell down or was pushed down by defendant, who then straddled her, and choked her with both of his hands around her neck, applying "[a] lot, a lot of pressure, very strong," causing her to lose consciousness a second time.

Testimony from the responding police officer revealed that the victim had a laceration on the back of her head, which required 18 staples at the hospital, as well as a lot of red marks, bruising, and cuts in her neck area. The victim testified that she thought she was going to die during the attack, and was scared for her life. In fact, when she arrived at defendant's mother's house seeking help, she stated that defendant had tried to kill her, which further indicated the grave and life threatening nature of the assault. From this testimony describing the violent, aggressive, and repeated nature of defendant's assaultive conduct during the attack, the jury could reasonably find, beyond a reasonable doubt, that defendant assaulted the victim with an actual intent to kill her. See *id*. Although defendant claimed that the victim's injuries were accidental, it is the role of the jury to determine the weight of the evidence and the credibility of witnesses. See *McRunels*, 237 Mich App at 181. Viewing the evidence in the light most favorable to the prosecution, a rational jury could find the essential elements of the crime of assault with intent to commit murder were proved beyond a reasonable doubt. See *Malone*, 287 Mich App at 654; *McRunels*, 237 Mich App at 181-182. Thus, this argument is without merit.

## II. OTHER ACTS EVIDENCE—DRUG DEAL

At trial, the prosecutor elicited testimony from the victim that defendant pawned her engagement ring because "he owed somebody some money for a bad drug deal[.]" Defendant asserts on appeal that this evidence of his involvement in a drug deal was improperly admitted because the prosecution failed to provide the requisite pretrial notice under MRE 404(b)(2) of its intent to introduce the testimony, and the court's allowance of the testimony denied him a fair trial. We disagree.

Although defendant objected to the substantive admissibility of the challenged testimony before and during trial, he did not raise his claim of deficient notice before the trial court, and thus his notice issue is not properly preserved for our review. See *People v Dobek*, 274 Mich App 58, 87; 732 NW2d 546 (2007). We review unpreserved evidentiary issues for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999). To avoid forfeiture of an unpreserved issue, defendant must demonstrate plain, outcome-determinative error. *Id.* We review the trial court's decisions regarding the admissibility of evidence for an abuse of discretion. *People v Duenaz*, 306 Mich App 85, 90, 98; 854 NW2d 531 (2014) (citation omitted). "An abuse of discretion occurs when a trial court's decision is outside the range of principled outcomes." *Id.* (citation omitted). "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

Under MRE 404(b), other acts evidence is not admissible to prove the character of a defendant to show action in conformity therewith. *People v Magyar*, 250 Mich App 408, 413-414; 648 NW2d 215 (2002). However, other acts evidence may be introduced for a non-character purpose, such as proof of "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ." MRE 404(b)(1). Other acts evidence is admissible under MRE 404(b) where (1) it is offered for a proper purpose, (2) it is relevant, and (3) its probative value is not substantially outweighed by the danger of unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Generally, under MRE 404(b)(2), the prosecution must provide reasonable pretrial notice of the nature of other acts evidence it intends to introduce and the rationale for admitting the evidence. *People v Hawkins*, 245 Mich App 439, 454; 628 NW2d 105 (2001). This Court has held that the prosecution's failure to provide pretrial notice did not prejudice the defendant so as to warrant reversal where defense counsel was aware of the other acts evidence before trial. *Dobek*, 274 Mich App at 87.

In this case, defendant had the requisite notice before trial of the nature of the evidence regarding his involvement in a drug deal and the prosecution's rationale for admitting the testimony. See MRE 404(b)(2); *Hawkins*, 245 Mich App at 454. Defendant brought a pretrial motion to exclude the potential testimony, which was revealed in the victim's police statement, on the basis that it was impermissible character evidence under MRE 404(b). Thus, defendant was obviously aware of the existence and nature of the potential testimony before trial. See *Dobek*, 274 Mich App at 87; *Hawkins*, 245 Mich App at 454-455. In response to the motion, the prosecution provided notice of its intent to introduce the testimony and the rationale for admitting it—to explain the context of their argument that occurred on the night of the assault, thereby ensuring its relevancy and use for a proper non-character purpose. Clearly, the hearing on his motion afforded defendant the opportunity to object to the evidence before trial. See *Hawkins*, 245 Mich App at 454-455. Therefore, defendant had adequate notice of the challenged evidence before trial. See *Dobek*, 274 Mich App at 87; *Hawkins*, 245 Mich App at 454-455.

Further, the challenged testimony was properly admitted under MRE 404(b). The record is clear that the prosecution did not introduce the testimony regarding defendant's involvement in a drug deal to prove defendant's bad character to show his propensity to commit the assault. See MRE 404(b)(1). Instead, the evidence was admitted for a proper non-character purpose, and it was relevant, as well as probative to the prosecution's theory. See *Knox*, 469 Mich at 509-510.

That is, the challenged testimony of defendant's state of mind on the night of the attack explained why defendant and the victim were arguing, making it more probable that defendant was in an angered state and that the incident was not accidental as he claimed, which in turn, was probative of defendant's intent in and/or motive for committing the assault. See MRE 401; *Watkins*, 491 Mich at 470. Accordingly, defendant is not entitled to a new trial as a consequence of the admission of the challenged evidence.

## III. OTHER ACTS EVIDENCE—DOMESTIC VIOLENCE

During trial, testimony was elicited regarding the past domestic violence between defendant and the victim, including that defendant was physically and verbally abusive toward the victim and defendant had a domestic violence conviction stemming from a prior domestic dispute that resulted in a no-contact order, which prohibited defendant from having contact with the victim. Defendant asserts that the trial court erred by allowing the admission of the domestic violence testimony because the prosecution failed to provide notice of its intent to introduce the other acts of domestic violence as required under MCL 768.27b and that the improper admission of the testimony denied him a fair trial. We disagree.

MCL 768.27b allows for the admission of evidence of other acts of domestic violence for any purpose for which it is relevant, including the propensity to commit the charged offense. *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). There is a notice requirement that must be met before such evidence is admitted and, in this case, such notice was not provided. But the prosecutor did not seek to admit the evidence of domestic violence under MCL 768.27b; rather, it was offered—and admitted by the trial court—under MRE 404(b). Therefore, defendant's argument that the prosecutor failed to provide the requisite notice under MCL 768.27b is without merit. Further, the evidence was properly admitted under MRE 404(b). It is evident from the record that the prosecutor offered the domestic violence evidence for a proper non-character purpose, to explain why the victim was afraid of defendant and allowed him to stay in the house despite the no-contact order. Further, the evidence was clearly relevant to and probative of the issues in this case. Accordingly, defendant is not entitled to a new trial as a consequence of the admission of the challenged evidence.

## IV. SENTENCING ISSUES

### A. SCORING OF OFFENSE VARIABLES 5, 10, AND 12

Defendant next argues that the trial court erred in scoring Offense Variables (OV) 5, 10, and 12. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

First, defendant argues that OV 5 was incorrectly scored 15 points (psychological injury to a member of the victim's family) because the court already scored 10 points under OV 4 (psychological injury to the victim), thereby elevating his minimum sentence twice for

psychological injury. However, MCL 777.22(1) plainly requires that the court score OV 4 for all crimes against a person and, additionally, that the court score OV 5 for homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit murder. See also *People v Armstrong*, 247 Mich App 423, 425-426; 636 NW2d 785 (2001). Thus, contrary to defendant's argument on appeal, the trial court properly scored both OV 4 and OV 5 in this case.

Second, defendant challenges the trial court's assessment of 10 points under OV 10, arguing that "OV 10 is not to be scored simply because the relationship exists." But that is not why OV 10 was scored at 10 points. OV 10 addresses the exploitation of a vulnerable victim and allows 10 points to be scored when the defendant exploits a domestic relationship. *People v Dillard*, 303 Mich App 372, 380; 845 NW2d 518 (2013), quoting MCL 777.40(1)(b). "Exploit" is statutorily defined as "manipulat[ing] a victim for selfish or unethical purposes." MCL 777.40(3)(b). In this case, the victim was clearly vulnerable and afraid because defendant was physically and verbally abusive toward her. Defendant exploited or took advantage of their relationship and the victim's fear of him to ensure that he remained in her home, after which he entered her bedroom when she was most vulnerable, while she was asleep, and brutally attacked her. The trial court properly assessed 10 points under OV 10.

Third, defendant challenges the trial court's assessment of 5 points under OV 12. If a defendant committed one contemporaneous felonious criminal act involving a crime against a person, 5 points are assessed under OV 12. MCL 777.42(1)(d). A felonious criminal act is contemporaneous "if the act occurred within 24 hours of the sentencing offense" and "the act has not and will not result in a separate conviction." MCL 777.42(2)(a). "[W]hen scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010). In this case, defendant committed multiple acts of assault and strangulation against the victim, any of which could have been considered a "contemporaneous felonious criminal act" under MCL 777.42(1)(d). But even if OV 12 was improperly scored, defendant's minimum sentencing range would not have changed because he would have remained within the OV IV Level with 66 points. See MCL 777.62. Accordingly, defendant would not be entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89 n 8, 91-92; 711 NW2d 44 (2006).

## B. SENTENCING JUDGE

Next, defendant argues that he is entitled to resentencing because the sentencing judge was not the same judge who presided over his trial. We disagree. Defendant failed to preserve this issue and, thus, our review is limited to plain error affecting substantial rights, i.e., outcome-determinative error. See *Carines*, 460 Mich at 763-764.

"Generally, a defendant should be sentenced by the judge who presided at his trial, provided that the judge is reasonably available." *People v Pierce*, 158 Mich App 113, 115; 404 NW2d 230 (1987). Defendant does not argue, nor is there anything in the record, indicating that the trial judge, a retired and visiting judge, was reasonably available to preside at the sentencing hearing. See *id*. Accordingly, defendant failed to establish plain error. *Carines*, 460 Mich at 763-764; *People v Van Auker (After Remand)*, 132 Mich App 394, 399; 347 NW2d 466 (1984), rev'd in part on other grounds 419 Mich 918 (1984). Further, defendant does not argue that the

judge who presided over his sentencing hearing was uninformed about the evidence admitted at trial or was unable to tailor a sentence to fit the circumstances of the case and the offender. See *Pierce*, 158 Mich App at 115-116. Moreover, defendant was sentenced within the minimum sentencing guidelines range. Accordingly, this argument is without merit.

## C. *ALLEYNE* CHALLENGE

Finally, defendant argues that the offense variables were not proven beyond a reasonable doubt in violation of *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). In *Alleyne*, the United States Supreme Court held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury" and found beyond a reasonable doubt. *Alleyne*, 133 S Ct at 2155, 2158. In *People v Herron*, 303 Mich App 392; 845 NW2d 533 (2013), this Court held that the Supreme Court's decision in *Alleyne* does not implicate Michigan's sentencing scheme. See also *People v Lockridge*, 304 Mich App 278, 284; 849 NW2d 388, lv gtd 496 Mich 852 (2014). This Court is bound to follow previous published decisions of this Court, and thus, is bound to follow *Herron*.[1] MCR 7.215(J)(1).

Affirmed.

/s/ Patrick M. Meter
/s/ Mark J. Cavanagh
/s/ Kurtis T. Wilder

---

[1] We note that our Supreme Court has granted leave in *Lockridge* to consider "whether a judge's determination of the appropriate sentencing guidelines range, MCL 777.1, *et seq.*, establishes a 'mandatory minimum sentence,' such that the facts used to score the offense variables must be admitted by the defendant or established beyond a reasonable doubt to the trier of fact" pursuant to *Alleyne*. This Court has held the application for leave to appeal in *Herron* in abeyance pending the resolution of *Lockridge*. However, an order granting leave to appeal does not diminish or alter the precedential effect of a published opinion of this Court. MCR 7.215(C)(2).